CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUN 20 2019

JULIA C. DUDLEY, CLERK
BY: HMcDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DWAYNE BAKER, | ) | |
| | ) | |
| Petitioner, | ) | CASE NO. 7:18CV00620 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| HAROLD CLARKE, | ) | By: Hon. Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Respondent. | ) | |

Petitioner Dwayne Baker, a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging administrative decisions in March and April of 2017 that reduced the rate at which he would earn good-behavior credit against his state prison sentence. The petition is presently before me on the respondent's motion to dismiss and Baker's response thereto. For the reasons set forth below, I will grant the motion to dismiss.

I.

Baker is in the custody of the Virginia Department of Corrections ("VDOC"), serving a six-year prison term for aggravated involuntary manslaughter, imposed in December of 2014.[1] In May of 2016, Baker was confined at Coffeewood Correctional Center ("CWCC") and had been assigned to Class Level 1 for purposes of accruing "sentence credit" to reduce his term of confinement. (Pet. 12, {ECF No. 1]). Baker's ability to earn sentence credit is governed by Virginia's statutory scheme titled "Earned Sentence Credits ["ESC"] for persons Committed Upon Felony Offenses Committed on or After January 1, 1995." See Va. Code Ann. §§ 53.1-202.2 to 53.1-202.4. An ESC-eligible inmate can earn a maximum of four and one-half "sentence credits"

---

[1] The factual allegations in this section are drawn from Baker's submissions in this case [ECF Nos. 1 and 15], stated in the light most favorable to him. I have also reviewed the online docket of the Supreme Court of Virginia.

for each thirty days of his prison sentence that he serves. By statute, the Board of Corrections establishes "the criteria upon which a person shall be deemed to have earned sentence credits." Va. Code Ann. § 53.1-202.4. According to Baker, VDOC Operating Procedure ("OP") 830.3 provides that an inmate assigned to ESC Class Level 1 is granted the maximum number of sentence credit days for every thirty days served, while inmates in ESC Class Levels 2 and 3 are granted fewer sentence credit days during that period, and an inmate in ESC Class Level 4 is granted no sentence credit days. A "Legal Update" sheet dated May 13, 2016, projected that if Baker "continued to earn good time at the present earning level," his "Good Time Release" date would be November 6, 2019. (Pet. Ex. 7, [ECF No. 1]).

In 2016 and early 2017, however, Baker incurred nine disciplinary infractions at CWCC.[2] (Resp. 17, [ECF No. 15]). Baker alleges that many of these disciplinary charges (and other charges since) were based on conduct caused by symptoms of his "Narcolepsy with Cataplexy," a disability, in violation of the Eighth Amendment (Pet. 8, 22, [ECF No. 1]). On April 20, 2017, Baker was transferred to Lawrenceville Correctional Center ("LVCC"). On August 22, 2017, he received two VDOC documents, dated March 7 and April 19, 2017, stating that institutional classification authority ("ICA") hearings had been conducted, and recommendations to reduce Baker to ESC Class Level 4 had been approved. (Pet. Ex. 9, [ECF No. 1]). His disciplinary infractions in 2016 and early 2017 at CWCC were mentioned as one reason for the ESC Class Level change. On August 22, 2017, Baker also received a VDOC "Legal Update," dated April 13, 2017, showing that he had been reduced to Class Level 3 on November 28, 2016, and to Class

---

[2] In Baker's petition, he complains that more than forty disciplinary proceedings against him have not comported with due process protections. His response to the motion to dismiss includes a list of thirty-three disciplinary charges, only nine of which occurred while Baker was at CWCC between May 2016 and April 2017. These nine charges are the only ones that could have had any bearing on the Class Level change that occurred in March of 2017. Thus, these nine CWCC charges are the only ones relevant to my consideration of Baker's habeas challenge to that Class Level reduction decision.

2

Level 4 on March 7, 2017. (Pet. Ex. 8, [ECF No. 1]). At ESC Class Level 4, Baker could not earn good conduct time.

In April of 2018, Baker filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, contending that he was denied due process during disciplinary proceedings on many charges, including the nine infractions he incurred at CWCC. (Mem. Supp. Mot. Dism. Ex. 1, [ECF No. 8-1]). Baker referred to most of the charges as "false." Id. In his petition, Baker also raised retaliation claims and complained of later "false" disciplinary charges and faulty hearings at LVCC. The Supreme Court of Virginia dismissed his habeas petition in July of 2018 and denied his petition for rehearing in October of 2018.

Baker signed and dated his § 2254 petition on December 7, 2018. In it, he alleges these claims:

1. VDOC officials deprived Baker of his liberty interest in ECS sentence credits without due process in March and April of 2017 because (a) they failed to provide all required procedural protections during disciplinary proceedings at CWCC in 2016 and 2017, and (b) they relied on the wrongfully obtained disciplinary convictions to reduce Baker to Class Level 3 and 4;

2. VDOC officials have conspired to retaliate against Baker for filing grievances and lawsuits by bringing more than forty false disciplinary charges against him that either caused the reduction of his Class Level or have since prevented him from being reclassified to a more favorable Class Level; and

3. VDOC officials discriminated against Baker, in violation of the Equal Protection Clause of the Fourteenth Amendment, because he is a "disabled African-American Prisoner" who filed grievances.

As relief, Baker seeks "[r]estoration of Earned Sentence Credits," invalidation of all disciplinary infractions, and "immediate or speedier release" from confinement. (Id.)

Respondent has filed a motion to dismiss, arguing that Baker's claims are untimely filed, without merit, or not cognizable in a habeas corpus proceeding. Baker has responded, making the matter ripe for disposition.[3]

II.

The one-year period of limitation for filing a habeas petition under § 2254 begins to run on the latest of four dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the

---

[3] Baker has moved for appointment of counsel and for leave to engage in discovery. Under Rule 6(a) of the Rules Governing Section 2254 Cases, parties must obtain leave of court upon good cause shown to engage in discovery. For reasons explained herein, I conclude from the existing record that Baker is not entitled to habeas relief. Accordingly, I do not find cause to allow discovery or to appoint counsel. See 18 U.S.C. § 3006A(a)(2)(B) (authorizing appointment of counsel in § 2254 case at court's discretion only upon finding that "the interests of justice so require"). Accordingly, I will deny Baker's motion on these issues.

Baker has also filed a motion for reconsideration of my earlier order denying his first motion for interlocutory injunctive relief to avoid a transfer. Since I denied Baker's first motion, he has been transferred and is now confined at Sussex II State Prison ("Sussex II"). As such, his motion asking me to prevent his transfer is moot. See Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive . . . relief with respect to his incarceration there.").

Baker's second motion for interlocutory relief I will also deny, because it is improperly presented in this habeas corpus case. Baker asserts that his housing assignment at Sussex II puts him at risk of assault by an enemy inmate at that facility and asks the court to order his transfer to a different prison facility. This contention does not challenge the fact or length of his confinement as required for it to fall within the purview of a habeas action. See Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (holding that regardless of the relief sought or conduct challenged, the proper remedy lies in habeas corpus only if "success in [an] action would necessarily demonstrate the invalidity of confinement or its duration"). Moreover, Sussex II is located within the jurisdiction of the United States District Court for the Eastern District of Virginia. If warranted, Baker may address his safety concerns about Sussex II in a new civil rights action filed in that court, which has jurisdiction over officials who are now accountable for his safety.

4

> Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The parties agree that Baker's one-year filing period must be calculated from the time when he could first have discovered, with due diligence, that his disciplinary convictions had caused a reduction in his Class Level.

Baker has alleged that, through no fault of his own, he first discovered his reduction to Class Level 4 on August 22, 2017, when he received the ICA reports from March and April and the Legal Update. With no evidence to the contrary, I will accept that date as the trigger point for calculating Baker's one-year filing period under § 2244(d)(1)(D). In April of 2018, after about eight months of the federal filing period had elapsed, Baker filed his state habeas petition in the Supreme Court of Virginia. While that petition was pending, the federal filing period was tolled. See 28 U.S.C. § 2244(d)(2) (providing that "properly filed" application for state post-conviction or other collateral review tolls federal filing period). When that petition had been denied and Baker's petition for rehearing was also denied in October of 2018, the federal filing period began running again. Baker filed his § 2254 petition in December of 2018. Given this timing, I conclude that Baker's claims about the reductions in his Class Level in March and April of 2017 cannot be dismissed under § 2244(d)(1)(D) as untimely filed.

I do find, however, that Baker's separate claims of due process violations during his individual disciplinary proceedings in 2016 and 2017 were not timely filed. From the record, it is clear that Baker knew the outcomes of these proceedings within weeks after each hearing, when his disciplinary appeals concluded. More importantly, he has presented no evidence that he could first have discovered any of these outcomes only <u>after</u> the reduction in his Class Level in March

5

of 2017. Thus, I will calculate his filing period under § 2244(d)(1)(D), starting in March of 2017, when those infractions were used in the decision to reduce his ESC Class Level. As such, I conclude that Baker's one-year period to file a federal habeas petition challenging each of these nine disciplinary proceedings in 2016 and 2017 expired no later than April of 2018. Therefore, to the extent that he attempts in his current petition to bring due process challenges about the disciplinary proceedings themselves, his claims are barred as untimely filed.

III.

A federal court may grant habeas relief from a state court judgment "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Fourteenth Amendment prohibits a state from depriving an individual of liberty without due process of law. U.S. Const. amend. XIV. A constitutionally protected liberty interest "may arise from the Constitution itself, by reason of guarantees implicit in the word liberty, . . . or it may arise from an expectation or interest created by state laws or policies."[4] Wilkinson v. Austin, 545 U.S. 209, 221 (2005).

Inmates have no liberty interest derived from the Constitution itself in receiving good-time credit or in a particular good-time credit earning level. Wolff v. McDonnell, 418 U.S. 539, 557 (1974). Thus, for Baker to succeed in his claim, he must show that Virginia statutes or regulations create a protected liberty interest for him in retaining his ESC Class Level. This showing he cannot make. On the contrary, "it is well established that Virginia inmates do not enjoy a protected liberty interest in the rate at which they earn either Earned Sentence Credits or Good Conduct Allowances," another form of sentence credits some VDOC inmates may be granted. Dennis v.

---

[4] I have omitted internal quotation marks, alterations, and citations here and throughout this memorandum opinion, unless otherwise noted.

6

Clarke, No. 3:15CV603, 2016 WL 4424956, at *6 (E.D. Va. Aug. 17, 2016) (citing many cases); Mills v. Holmes, 95 F. Supp. 3d 924, 931-34 (E.D. Va. 2015).

State statutes create a liberty interest entitled to federal constitutional due process protections when they involve a status change that "inevitably affect[s] the duration of" the inmate's confinement. Sandin v. Conner, 515 U.S. 472, 484 (1995). "[N]o constitutionally protected liberty interest is . . . created under the [statutory] regime [if] either the primary decisionmaker or any reviewing authority is authorized to override, as a matter of discretion, any classification suggested by application of the prescribed substantive criteria." Mills, 95 F. Supp. 3d at 933. Because Virginia's good conduct time programs endow officials with such discretion, whatever change a Class Level adjustment may render in an inmate's projected release date does not "inevitably affect" the actual length of time he will serve, so as to create a protected liberty interest under Sandin. Thus, I conclude that because Baker did not have a protected liberty interest in retaining his ESC Class Level, he had no federal constitutional right to particular procedural protections during proceedings when officials made changes to his ESC Class Level in November of 2016, in March of 2017, or at any Class Level review proceeding since then.

Baker also cannot demonstrate any constitutional violations arising from officials' alleged violations of state law or VDOC regulations related to his ESC Class Level. While state regulations may provide for more stringent procedural protections than the Due Process Clause requires, "a state's failure to abide by its own law as to procedural protections is not a federal due process issue." Brown v. Angelone, 938 F. Supp. 340, 344 (W.D. Va. 1996) (citing Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)). For the stated reasons, I will grant the motion to dismiss as to Baker's claim that the defendants deprived him of a protected liberty interest when they changed his Class Level in March of 2017.

## IV.

I also conclude that Baker's allegations of conspiracy, retaliation, and racial discrimination must be dismissed. The respondent argues that these claims do not fall within the scope of a habeas corpus action and should be presented in a civil rights action under 42 U.S.C. § 1983, if at all. I make no finding on this argument, because I conclude that Baker has not stated sufficient facts to state claims on these matters. To survive the defendants' motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), the "complaint must establish 'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Clatterbuck v. City of Charlottesville, 708 F.3d 549, 554 (4th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Baker simply fails to make the necessary factual showings to survive a motion to dismiss.

To establish a civil conspiracy claim actionable under § 1983, a plaintiff must demonstrate that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy," resulting in deprivation of a federal right. Glassman v. Arlington Cnty., Va., 628 F.3d 140, 150 (4th Cir. 2010) (quoting Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996)). A plaintiff must make specific allegations that reasonably lead to the inferences that members of the alleged conspiracy shared the same conspiratorial objective to try to "accomplish a common and unlawful plan" to violate the plaintiff's federal rights. Hinkle, 81 F.3d at 421.

Baker's petition simply asserts that numerous prison officials conspired against him in bringing disciplinary charges against him, finding him guilty, and eliminating his ability to earn good conduct time, based on the disciplinary convictions. A conspiracy claim cannot arise on such "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. Id. at 422. Merely labeling a chronological series of actions by multiple individuals

as "conspiracy," as Baker has done here, or providing nothing more than a conclusory, formulaic recitation of the legal elements of conspiracy, will not suffice. Nemet Chevrolet v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Therefore, I will grant the motion to dismiss as to Baker's conspiracy contentions.

Prison officials may not retaliate against an inmate for exercising his constitutional right to access the court, Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978), nor may they take actions that violate his "First Amendment right to be free from retaliation for filing a grievance." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). On the other hand, claims of retaliation against prison inmates must be treated with healthy skepticism, because many actions by prison officials are "by definition 'retaliatory' in the sense that [they are in] respon[se] to prisoner misconduct" or other concerning behaviors. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

> [T]o state a colorable retaliation claim under Section 1983, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct.

Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017), cert. denied, 138 S. Ct. 738 (2018). A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Id.

Baker alleges that he filed grievances and at least one lawsuit, thus exercising his First Amendment rights.[5] He also alleges that, thereafter, because of disciplinary convictions, officials took away his ability to earn good conduct time, which I find to be an adverse action for purposes of a retaliation claim. Thus, his petition alleges facts to meet the first and third prongs of the legal

---

[5] Furthermore, court records reflect that Baker has two civil rights actions pending at this time, Baker v. Davis, No. 7:18CV00503 and Baker v. Gilmore, No. 7:18CV00382.

9

standard for a retaliation claim. Baker's petition fails utterly, however, under the third prong. He simply does not present facts supporting a reasonable inference that the grievances and lawsuits caused officials to bring the disciplinary charges he disputes or to change Baker's ESC Class Level. His merely "conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a claim under § 1983." Harbin v. Rutter, 420 F.3d 571, 580 (6th Cir. 2005) (internal quotation marks, alterations, and citation omitted).

Moreover, an inmate may not state a claim of retaliation where the "discipline was imparted for acts that a prisoner was not entitled to perform," and which were unrelated to the inmate's grievance or lawsuit. Cowans v. Warren, 150 F.3d 910, 912 (8th Cir. 1998) (citation omitted). Baker fails to connect any of his grievances or lawsuits in any way to the disciplinary charges that contributed to the decision to change his ESC Class Level. Moreover, Baker's petition claims that many of the disciplinary infractions he incurred resulted from rule violations caused by his physical disabilities and medical conditions; he does not contend that his conduct did not also violate prison regulations. See, e.g., Earnest v. Courtney, 64 F.3d 365, 366-67 (8th Cir.1995) (per curiam) (finding assignment to utility squad for gambling not retaliation for inmate's filing of a grievance); Henderson v. Baird, 29 F.3d 464, 465, 469 (8th Cir. 1994) (finding inmate's assault charge not in retaliation for his reporting harassment to FBI); Goff v. Burton, 7 F.3d 734, 738 (8th Cir.1993) (alleged retaliatory transfer). In none of these cases was the conduct which formed the basis for the alleged retaliatory action related to the original grievance, and Baker's petition is similarly deficient. For the stated reasons, I will grant the motion to dismiss as to Baker's retaliation claims.

Finally, I must also dismiss Baker's allegations of discrimination and equal protection violations. "The Equal Protection Clause generally requires the government to treat similarly

situated people alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). To prove a § 1983 equal protection claim, an inmate "must first demonstrate 'that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002). Baker makes neither of these showings. He states no facts about being treated differently than similarly situated inmates—being charged with disciplinary infractions for acts, when other inmates were not charged for similar acts. He provides no evidence that other inmates who have incurred nine disciplinary infractions in the course of less than two years did not have an adverse change in ESC Class Level. Baker also fails to state any facts suggesting that his race or his medical issues have been a motivating factor in any particular disciplinary charge or in the classification decision to place him in ESC Class Level 4. His conclusory assertions that disability and race caused these events cannot, without supporting facts, state an actionable claim of discrimination or an equal protection violation of any kind. See, e.g., Chapman v. Reynolds, 378 F. Supp. 1137, 1140 (W.D. Va. 1974) (finding that conclusory accusations that different treatment may have been motivated by race are insufficient to state such a claim). I will grant the motion to dismiss as to Baker's Fourteenth Amendment claims.

V.

In accordance with the foregoing, I will grant the respondent's motion to dismiss. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for the respondent.

**ENTERED** this 20th day of June, 2019.

                                                       /s/ Jackson L. Kiser
                                           SENIOR UNITED STATES DISTRICT JUDGE